John J. Dillon, S.
The decedent died on March 1, 1961. An instrument bearing her signature dated August 26, 1958 has been offered for probate. By its terms the decedent’s entire estate is left to a named individual unrelated to the testatrix. Objections have been filed by the decedent’s niece.
All of the customary objections have been made but the proof involved nothing except the question of testamentary capacity. That the will was executed in accordance with statutory requirements was established by the subscribing witnesses, without *61 proof to the contrary. The contestant likewise offered nothing in support of her claim of undue influence. There is therefore no disputed issue except that of the decedent’s capacity to make a will.
Both subscribing witnesses testified that at the time when the instrument was executed the decedent was of sound and disposing mind and memory. Such testimony was buttressed by their account of prior and contemporaneous events. The contestant attempted to overcome the prima facie proof by the introduction of hospital records and the testimony of a psychiatrist. The decedent was a patient at United Hospital in 1953, 1954, 1957 and 1961, the last confinement culminating in her death. She was also in Grasslands Hospital from May 17 to August 30,1957. Her physical illnesses were meningitis, hypertension and eventually (just preceding her death in 1961) a brain abscess. The hospital records come no closer to the date of the will than August 30,1957, when the patient was discharged from Grasslands after having been there for about three and one-half months. During that time she had been frequently disoriented and confused as to dates, places and people. The difficulty with the contestant’s proof is the absence of evidence as to the deedent’s mental condition during the period of a full year between her discharge from the hospital and the making of the will.
The contestant attempted to relate the earlier condition to the date of the will by calling a psychiatrist who testified in response to hypothetical questions that from 1953 onward the decedent was incurably afflicted with severe hypertension, chronic meningitis and chronic brain abscess; that these diseases had a severe effect upon the brain functions; and that in the opinion of the witness the decedent could not and did not have the mental capacity on August 26, 1958 to make a valid will. The witness had never seen the decedent and at best the opinion of such a witness is entitled to little weight (Matter of Burnham, 201 App. Div. 621, affd. 234 N. Y. 475). It has been said that this is “ the weakest and most unreliable kind of evidence ” (Dobie v. Armstrong, 27 App. Div. 520, 527, affd. 160 N. Y. 584), which “ scarcely raise an issue ” (Matter of Loehr, 187 App. Div. 957, 958). But in this case the testimony of the expert contains its own refutation. He admitted that the decedent would have had lucid intervals during which she could have transacted business. Obviously he was in no position to say whether on the date when the will was made she was lucid or otherwise, whereas those who were actually present on that occasion say she was of sound mind. The testimony of the expert in the present case is *62 similar to the doctor’s testimony in Matter of Loehr (supra) where it was held that the will had been properly admitted to probate. Proof of a general condition of mental impairment which fails to exlude periods of lucidity is insufficient to overcome the testimony of subscribing witnesses (Matter of Alexieff, 94 N. Y. S. 2d 32, affd. 277 App. Div. 790). The issue of testamentary capacity must therefore be resolved in favor of the proponent.
The court finds that the will was executed in accordance with the requirements of section 21 of the Decedent Estate Law, and that at the time of its execution, the testatrix was in all respects competent to make a will and was not under restraint. The objections are therefore dismissed and the propounded instrument will be admitted to probate as a will valid to pass real or personal property.